# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## 2013-1515

### ENERGY RECOVERY, INC.,

Plaintiff-Appellee,

v.

### LEIF J. HAUGE,

Defendant-Appellant,

and

### ENERGY RECOVERY INTERNATIONAL, INC.,

Defendant.

_____

Appeal from the United States District Court for the Eastern District of Virginia in case no. 00-CV-0431, Judge Raymond A. Jackson

_____

### DEFENDANT-APPELLANT LEIF J. HAUGE'S OPENING BRIEF
_____

Dated:  September 16, 2013

Ahmed J.  Davis
Email: Davis@fr.com
Richard A. Sterba
Email: Sterba@fr.com
**FISH & RICHARDSON P.C.**
1425 K Street, NW, 11th Floor
Washington, DC 20005
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

*Attorneys for Defendant-Appellant*
*Leif J. Hauge*

## <u>CERTIFICATE OF INTEREST</u>

Counsel for the Defendant-Appellant, certifies the following:

1.      The full name of every party or amicus represented by me is:

Leif J. Hauge, an individual

2.      The names of the real party in interest represented by me are:

N/A.

3.      Parent corporations or publicly-held corporation that own more than

10% of movant's stock: N/A

4.      The names of all law firms and the partners or associates that

appeared for the parties or amicus now represented by me in the trial court or are

expected to appear in this court are:

Fish & Richardson P.C.:  Ahmed J. Davis and Richard A. Sterba
Poole Mahoney P.C.: Glen A. Huff and John B. Plumlee
Ventker & Associates PLLC: Paul E. McGowan

Dated:  September 16, 2013          */s/ Ahmed J. Davis*
                                     Ahmed J. Davis

i

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES ....................................................1

STATEMENT OF JURISDICTION....................................................2

STATEMENT OF THE ISSUES....................................................4

STATEMENT OF THE CASE....................................................5

STATEMENT OF FACTS ....................................................8

I.      The Originations of the Case ....................................................8

II.     Settlement Agreement ....................................................9

III.    Mr. Hauge Re-enters the Pressure Exchanger Industry ...............10

IV.     Hauge Approaches ERI ....................................................11

V.      ERI Moves For Contempt of Court ....................................................12

VI.     The District Court's Opinions ....................................................12

SUMMARY OF THE ARGUMENT ....................................................14

STANDARD OF REVIEW ....................................................17

ARGUMENT ....................................................19

I.      The District Court's Contempt Finding Was An Abuse of Discretion .........19

        A.   The District Court Erred in Finding That Mr. Hauge
             Violated The 2001 Settlement Order..............................................20

        B.   The District Court Erred in Finding That Mr. Hauge
             Knowingly Violated the 2001 Settlement Order..........................25

II.     The Scope of the Injunction Awarded By the District Court Was An
        Abuse Of Discretion ....................................................28

        A.   The Injunction Deprives Mr. Hauge From Doing What
             The 2001 Settlement Order Expressly Allowed............................28

B.   The Injunction in the Contempt Order is Improper
For Not Defining "Pressure Exchanger" **........................................**29

CONCLUSION ........................................................................................................32

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<span style="font-variant:small-caps">ASES</span>

*Abrutyn v. Giovanniello*,
  15 F.3d 1048 (Fed. Cir. 1994) ...........................................................17

*Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*,
  96 F.3d 1390 (Fed. Cir. 1996) ...........................................................29

*American Can Co. v. Mansukhani*,
  742 F.2d 314 (7th Cir. 1984) .............................................................30

*Ashcraft v. Conoco, Inc.*,
  218 F.3d 288 (4th Cir. 2000) ...............................................17, 19, 23

*Bass Pro Trademarks, L.L.C. v. Cabela's, Inc.*,
  485 F.3d. 1364 (Fed. Cir. 2007) ........................................................24

*Doral Produce Corp. v. Paul Steinberg Assoc., Inc.*,
  347 F.3d 36 (2d Cir. 2003) ................................................................17

*Entegris, Inc. v. Pall Corp*,
  490 F.3d 1340 (Fed. Cir. 2007) ...........................................................2

*F.T.C. v. Affordable Media*,
  179 F.3d 1228 (9th Cir. 1999) ...........................................................18

*Forest Labs., Inc. v. Ivax Pharms., Inc.*,
  501 F.3d 1263 (Fed. Cir. 2007) .........................................................18

*Frazar v. Hawkins*,
  376 F.3d 444 (5th Cir. 2004) ...............................................................2

*Hadix v. Johnson*,
  228 F.3d 662 (6th Cir. 2000) ...............................................................3

*In re General Motors Corp.*,
  61 F.3d 256 (4th Cir. 1995) ...............................................................19

*KSM Fastening Systems v. H.A. Jones Co.*,
  776 F.2d 1522 (Fed. Cir. 1985) .........................................................18

*Motorola, Inc. v. Comp. Displays Int'l, Inc.*,
739 F.2d 1149 (7th Cir. 1984) ............................................................2

*NLRB v. Express Publ'g Co.*,
312 U.S. 426 (1941)...........................................................................30

*Orenshteyn v. Citrix Sys., Inc.*,
691 F.3d 1356 (Fed. Cir. 2012) ...........................................................3

*Panduit Corp. v. HellermannTyton Corp.*,
451 F.3d 819 (Fed. Cir. 2006) ...........................................................24

*Perez v. Danbury Hosp.*,
347 F.3d 419 (2d Cir. 2003) ..............................................17, 28, 29

*Reliance Ins. Co. v. Mast Constr. Co.*,
84 F.3d 372 (10th Cir. 1996) ............................................................18

*RMT, Inc. v. Bhat Indus., Inc.*,
185 F.3d 886 (Fed. Cir. 1999) ...........................................................17

*Roberts v. St. Regis Paper Co.*,
653 F.2d 166 (5th Cir. 1981) ...............................................................2

*Schmidt v. Lessard*,
414 U.S. 473 (1974)...........................................................................30

*Seiko Epson Corp. v. Nu-Kote Int'l, Inc.*,
190 F.3d 1360 (Fed. Cir. 1999) ...........................................................3

*Signtech USA Ltd. v. Vutek Inc.*,
174 F.3d 1352 (Fed. Cir. 1999) .........................................................18

*TiVo Inc. v. EchoStar Corp.*,
646 F.3d 869 (Fed. Cir. 2011) (*en banc*)...............................18, 19, 24

**STATUTES**

28 U.S.C. § 1292.................................................................................2

28 U.S.C. §§ 1331 and 1338 ...............................................................2

28 U.S.C. § 2201 .................................................................................2

FED. R. APP. P. 47.5 ................................................................................ 1

FED. R. CIV. P. 65(d) ......................................................... 16, 18, 29, 31

## STATEMENT OF RELATED CASES

Pursuant to FED. R. APP. P. 47.5, counsel for Appellant states that no other appeal in or from the same civil action or proceeding in the lower court was previously before this or any other appellate court. There is one pending case known to counsel involving the same parties in this litigation—a California state court trade secrets case, Case No. RG11571227 (Alameda County Sup. Ct.)— which may be affected by this Court's decision.

## STATEMENT OF JURISDICTION

The district court had jurisdiction over these cases under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and under 28 U.S.C. §§ 1331 and 1338. On June 24, 2013, the district court entered final judgment that Appellant-Defendant Leif J. Hauge ("Mr. Hauge") was in violation of the district court's March 19, 2001 Settlement Order ("2001 Settlement Order") and therefore issued a Contempt Order ("Contempt Order"). Mr. Hauge timely appealed that judgment.

This Court has jurisdiction over this appeal under 28 U.S.C. § 1292. Orders modifying a consent decree are appealable,[1] even if the district court has not yet imposed sanctions, because of the potentially devastating effect of changing the legal relationship between the parties to the underlying agreement. *See, e.g., Motorola, Inc. v. Comp. Displays Int'l, Inc.*, 739 F.2d 1149, 1155 (7th Cir. 1984). Here, even assuming *arguendo* that the district court's contempt finding was proper, the parties' legal relationship was significantly altered by the district court when it entered an injunction far broader than what the parties themselves originally contemplated. *Cf. Entegris, Inc. v. Pall Corp.*, 490 F.3d 1340, 1345 (Fed. Cir. 2007) (finding no jurisdiction because the injunction did not, *inter alia*, "prolong or extend and existing injunction"). This Court thus has jurisdiction to

---

[1] Consent decrees are injunctions for purposes of 28 U.S.C. § 1292. *See, e.g., Frazar v. Hawkins*, 376 F.3d 444, 446 (5th Cir. 2004); *Roberts v. St. Regis Paper Co.*, 653 F.2d 166, 170 (5th Cir. 1981).

2

review the Contempt Order because it effectively modified and expanded the 2001 Settlement Order by expanding the scope of products beyond those enjoined by the terms of the original consent decree. *Seiko Epson Corp. v. Nu-Kote Int'l, Inc.*, 190 F.3d 1360, 1369 (Fed. Cir. 1999).

This Court also has jurisdiction over this appeal under the doctrine of pendent appellate jurisdiction. Although Federal courts of appeals usually review district court orders only after entry of final judgment, the doctrine of pendent appellate jurisdiction allows appellate courts to exercise jurisdiction over issues that are not independently appealable when those issues are "inextricably intertwined" with matters over which the appellate court properly and independently has jurisdiction. *See Orenshteyn v. Citrix Sys., Inc.*, 691 F.3d 1356, 1358 (Fed. Cir. 2012); *Hadix v. Johnson*, 228 F.3d 662, 669 (6th Cir. 2000).

Here, resolving the propriety of the district court's injunction necessarily requires resolving the propriety of the Contempt Order. Specifically, if this Court determines that Hauge did not violate the 2001 Settlement Order, the Contempt Order necessarily must be set aside. *See Orenshteyn*, 691 F.3d at 1360 (distinguishing exercise of pendent jurisdiction as proper where "the final decision and the non-final award of attorney's fees had essentially the same legal basis.").

## STATEMENT OF THE ISSUES

1.    Whether the district court erred when it found that Mr. Hauge violated the terms of the 2001 Settlement Order even though it expressly found no patent infringement, no trade secret violation, and failed to define or otherwise resolve the dispute about the definition of Pressure Exchanger Technology.

2.    Whether the district court erred when it found that Mr. Hauge knowingly violated the 2001 Settlement Order, even though there was no evidence that Mr. Hauge understood the agreement to have the meaning now alleged by ERI.

3.    Whether the district court erred, even if the contempt finding was proper, by enjoining Mr. Hauge from performing acts expressly permitted by the 2001 Settlement Order.

## STATEMENT OF THE CASE

The case from which this dispute arises was settled and the matter closed well over a decade ago. On March 19, 2001, the district court entered an Order incorporating the parties' Settlement Agreement executed three days earlier. [JA-10-42.] In relevant part, the Agreement transferred to Appellee Energy Recovery, Inc. ("ERI") ownership of three U.S. Patents and one pending U.S. patent application, *to wit*: United States Patent No. 4,887,942; United States Patent No. 5,338,158; United States Patent No. 5,988,993; and United States Patent Application 09/508,694, which later issued as United States Patent No. 6,659,731. [JA-13.] The Agreement also expressly allowed Mr. Hauge (and the other defendants) to continue to develop and maintain ownership of intellectual property in the field of pressure exchangers after the Agreement:

> This assignment and transfer of rights is not intended to extend to inventions by Hauge, Marissa Hauge, Hauge Technologies and Hermanstad made after the date of this Agreement.

[JA-16.] The only limitation specifically placed on Mr. Hauge's post-Agreement activity was a limited covenant not to compete, which prohibited him from making or selling energy recovery devices for use in reverse osmosis salt water desalination for a period of two years after the Agreement. [JA-18.] Mr. Hauge abided by the terms of this Agreement.

5

On August 10, 2004—over three years after the execution of the 2001

Settlement Order and 17 months after the expiration of the non-compete clause in

the Settlement Agreement—Mr. Hauge filed a provisional patent application titled

"Pressure Exchanger." [JA-73.] The Abstract of the invention described "[a]

pressure exchanger for transferring pressure energy from a high-pressure fluid

stream to a low-pressure fluid stream." [*Id.*] This provisional application was

followed by a full utility application—similarly titled "Pressure Exchanger"—filed

one year later. [*Id.*] From the utility application, a new patent issued on

December 11, 2007, as United States Patent No. 7,306,437 ("the '437 patent").

[*Id.*]

Two years later, in 2009, Mr. Hauge met with ERI representatives to discuss

"the possibility of uniting all pressure exchanger technology and IP rights under

the umbrella of [ERI] and the potential benefit to those concerned." [JA-85.]

During the meeting, and in subsequent correspondence, Mr. Hauge clearly

explained he was representing a new company owned by international investors,

Isobarix, and he *specifically identified* to ERI the new patent that he had obtained.

[*Id.* ("In those meetings I represented Isobaric Strategies, Inc. (ISI) [Isobarix]

which holds exclusive rights to commercialization of all post ERI settlement IP

developed by myself, including but not limited to U.S. Patent 7,306,437.")].

Despite these discussions and Mr. Hauge's efforts, no deal was reached. Notably, at no time during or soon after these discussions did anyone from ERI suggest, intimate or otherwise contend that Mr. Hauge had violated the terms of the parties' Settlement Agreement from eight years prior. To the contrary, ERI's President and CEO acknowledged that ERI gave "some of the ideas you [Hauge] *have been working on since you parted with ERI* . . . careful consideration," but decided not to go forward. [JA-84 (emphasis added).]

But three years later, once Isobaric Strategies began selling a competing device embodying the improvements taught and disclosed in the duly-issued '437 patent to Mr. Hauge, ERI sought to have Mr. Hauge held in contempt of the 2001 Settlement Order. ERI claimed that it was being irreparably harmed, and thus asked the district court to enjoin Hauge and thereby causing halt to Isobarix's legitimate business activity in practicing the '437 patent. ERI sought this extraordinary relief after waiting *over three years* after Mr. Hauge first approached ERI and openly touted his new "Pressure Exchanger" patent.

Nevertheless, on June 24, 2013, the district court found that Mr. Hauge knowingly and intentionally violated the terms of the Settlement Agreement, was in contempt of the district court's 2001 Settlement Order, and thus forever enjoined Mr. Hauge, "whether through Isobarix or any other person or entity, from

manufacturing and selling pressure exchangers and replacement parts for ERI's pressure exchangers." [JA-9.]

This finding was legal error, as were the various subsidiary findings discussed below. Mr. Hauge thus respectfully requests that the district court's determination on contempt be reversed.

## STATEMENT OF FACTS

### I. The Originations of the Case

After years of researching energy efficient pumping and water purification technology, Mr. Hauge invented the energy recovery devices described in two U.S. patents, namely U.S. Patent No. 4,887,942 and U.S. Patent No. 5,338,158, and additional non-U.S. patents. After filing the international patent applications that ultimately led to his U.S. patents Mr. Hauge founded ERI in 1992 to commercialize his inventions.

In January 2000, a dispute developed between Mr. Hauge and ERI. As a result of this dispute, Mr. Hauge and ERI parted ways. After leaving ERI, Mr. Hauge and a majority of ERI's shareholder owning 45% of its stock, formed a new corporation that ultimately came to be known as Hauge Technologies, Inc. After formation of the new company, Mr. Hauge recorded in the United States Patent and Trademark Office an assignment of the following patents and patent

application to Hauge Technologies: U.S. Patents No. 4,887,942; 5,338,158; and

5,988,993; and U.S. Patent Application No. 09/508,694, filed March 29, 2000.

Disagreeing with Mr. Hauge's assignment of his inventions to Hauge

Technologies, ERI filed an action in the Circuit Court for the City of Virginia

Beach and an action in the United States District Court for the Eastern District of

Virginia, Norfolk Division.  In response, Hauge Technologies filed numerous

counterclaims against ERI in both actions.  Each side denied the others' respective

claims.  On March 16, 2011, to resolve all the litigation, the parties agreed to

compromise, settle, and resolve their disputes as set forth in a Settlement

Agreement ("Settlement Agreement").

## II. Settlement Agreement

In the Settlement Agreement, ERI and Mr. Hauge agreed to "ABSOLUTE

TRANSFER OF ALL RIGHTS IN PATENTS, PATENT APPLICATIONS AND

ALL RELATED INTELLECTUAL PROPERTY TO ENERGY RECOVERY."

[JA-16.]  Among other things, the Settlement Agreement purported to transfer "the

Patents and Patent Applications … [and] all other intellectual property rights and

other rights relating to pressure exchanger technology pre-dating this Agreement

('Pressure Exchanger Technology')."  *Id*.  The following sentence acknowledges

that "[t]his assignment and transfer of rights is not intended to extend to inventions

by Hauge, Marissa Hauge, Hauge Technologies and Hermanstad made after the

9

date of this Agreement." *Id*.  The same section of the Agreement further states that

ERI "is the sole source for pressure exchangers built pursuant to such Patents

and/or Patent Applications and the Pressure Exchanger Technology." *Id*.

The Settlement Agreement further includes a covenant not to compete of

limited duration.  Specifically, ERI and Mr. Hauge agreed that "Hauge agrees for a

period of two (2) years from the date of this Agreement not to directly or indirectly

make or sell an energy recovery device for use in reverse osmosis salt water

desalination…." *Id*.

## III.    Mr. Hauge Re-enters the Pressure Exchanger Industry

In August 2004, after expiration of the two-year non-compete term in the

Settlement Agreement, Mr. Hauge filed a provisional patent application entitled

"Pressure Exchanger" on August 10, 2004.  The Abstract of the invention

described "[a] pressure exchanger for transferring pressure energy from a high-

pressure fluid stream to a low-pressure fluid stream."  This provisional application

was followed by a full utility application—similarly titled "Pressure Exchanger"—

filed one year later.

The specification of Mr. Hauge's utility application titled "Pressure

Exchanger" claimed a new pressure exchanger that Mr. Hauge invented after

leaving ERI.  The application expressly disclosed and incorporated by reference

into the Background of the Invention section all three issued patents that had been transferred to ERI as a part of the 2001 Settlement Order.  [JA-79, Col. 1.]

During prosecution of Mr. Hauge's application, the patent Examiner further cited Mr. Hauge's earlier '731 patent, which was the pending application that was transferred to ERI as a part of the Settlement Agreement.  [JA-73 (References Cited)].  The Examiner ultimately found Mr. Hauge's new invention patentable over the patents transferred to ERI, and his new patent issued in December 2007 as United States Patent No. 7,306,437 ("the '437 patent").  Hauge Technologies, Inc. held exclusive rights to pressure exchanger patents invented by Mr. Hauge until it defaulted on its license agreement in 2009, where after Isobarix became the new Licensee and finally the Assignee in February 1, 2010.

## IV.    Hauge Approaches ERI

In 2009, two years after the '437 patent issued, Mr. Hauge met with ERI representatives to discuss the possibility of working together again.  During that meeting, and in a follow-up email, Mr. Hauge explained he was meeting with ERI on behalf of a new company, Isobarix, and he specifically identified to ERI the new patent that he had obtained.  As Hauge explained, "In those meetings I represented Isobaric Strategies, Inc. (ISI) [Isobarix] which holds exclusive rights to commercialization of all post ERI settlement IP developed by myself, including but not limited to U.S. Patent 7,306,437."  [JA-85.]  Although no deal was reached

despite Mr. Hauge's efforts, ERI's President and CEO, Mr. Pique, acknowledged that Mr. Hauge approached ERI "with the intent to commercialize some of the ideas you [Hauge] have been working on since you parted with ERI" and stated "[we ERI] wish you [Hauge] success with current and future endeavors."   [JA-84.]

## V. ERI Moves For Contempt of Court

After ERI declined to work with Mr. Hauge, and after the expiration of the non-compete clause, Isobarix began selling a pressure exchanger based on the improvements taught and disclosed in the '437 patent.  Three years after ERI wished Mr. Hauge success with his plans to commercialize the pressure exchanger described in the '437 patent, ERI filed a Motion for Order to Show Cause.  In the Motion for Order to Show Cause, ERI sought to have Mr. Hauge held in contempt for violating the Settlement Agreement by selling the same Isobarix pressure exchangers that practiced the '437 patent owned by Isobarix.

## VI.    The District Court's Opinions

The district court found that Mr. Hauge was in violation of the district court's 2001 Settlement Order.  In making this determination, the district court recognized that "[t]he Settlement Agreement does not restrict Hauge from returning to work in the energy recovery field." [JA-4.]  The district court further acknowledged Mr. Hauge's interpretation of "the Agreement to mean that he is

free to build pressure exchangers not designed pursuant to ERI patents and proprietary technology," and did not disagree with Mr. Hauge's interpretation of the Settlement Agreement.  [JA-6.]  However, the district court stated that "[a]lthough the Court expresses no judgment as to the separate issue of whether Defendant is actually infringing ERI's patents, Defendant does little to dispel any doubt that he is in fact using ERI's technology." [JA-7.]  It further concluded that "[i]t is clear from Defendant's conduct and arguments before the Court that Hauge knowingly violated this Court's Order by attempting to appropriate the very pressure exchanger technology that formed the basis of the parties' prior dispute." [JA-6.]  The district court did not inquire as to how Isobarix pressure exchangers may infringe ERI patents or violate ERI trade secrets.  Neither did the district court define what ERI proprietary technology may be besides ERI patents and ERI trade secrets.

Based on the court's finding that Mr. Hauge knowingly violated the district court's 2001 Settlement Order, the district court forever prohibited Mr. Hauge, "whether through Isobarix or any other person or entity, from manufacturing and selling pressure exchangers and replacement parts for ERI's pressure exchangers." However, the district court did not define what it meant by "pressure exchangers" or "replacement parts for ERI's pressure exchangers." [JA-9.]

# SUMMARY OF THE ARGUMENT

The district court committed fundamental errors that require reversal or, at the very least, remand.

In finding that Mr. Hauge was in violation of the district court's 2001 Settlement Order, the district court erred as a matter of law.  The district court explicitly expressed no judgment on infringement of ERI's patents, and made no inquiry into whether Mr. Hauge violated any of ERI's trade secrets.  Without inquiry into whether there is infringement of ERI patents or a violation of ERI trade secrets, there can be no clear and convincing evidence that Isobarix pressure exchangers are using, or are produced using, ERI proprietary technology. Therefore, the finding that Mr. Hauge violated the terms of the district court's 2001 Settlement Order should be reversed.

The district court compounded this error by finding that Mr. Hauge knowingly violated the Order.  To find that Mr. Hauge knew he was violating the agreement, the district court must consider Mr. Hauge's state of mind.  However, the district court ignored that Mr. Hauge informed ERI that he intended to commercialize the pressure exchangers described in his '437 patent.  Mr. Hauge's voluntary notice leads to the opposite conclusion from which the district court found—that Mr. Hauge did not believe that producing and selling his newly invented pressure exchangers would violate the 2001 Settlement Order.  ERI's

14

actions confirmed Mr. Hauge's belief that he was not violating the 2001 Settlement Order: it never asked Mr. Hauge not to commercialize his pressure exchanger, and never suggested to Mr. Hauge that to do so would violate the 2001 Settlement Order.  Instead, it wished Mr. Hauge success in his current and future endeavors. The finding that Mr. Hauge knowingly violated the district court's 2001 Settlement Order, in light of this evidence, should be reversed.

The district court also committed legal error by forever prohibiting Mr. Hauge from manufacturing and selling *any* pressure exchangers, when it enjoined him "whether through Isobarix or any other person or entity, from manufacturing and selling pressure exchangers and replacement parts for ERI's pressure exchangers."  The injunction the district court entered is far broader than what the parties negotiated and agreed to in the Settlement Agreement.  Indeed, based on the inclusion of the limited non-compete clause in the Settlement Agreement, the parties clearly envisioned that Mr. Hauge would manufacture and sell pressure exchangers competing with ERI after the expiration of the clause. Now that the non-compete clause has expired, Mr. Hauge should be free to sell any pressure exchangers that do not use and are not produced using, ERI proprietary technology.  Rather than enjoin Mr. Hauge from expanding the scope of the parties agreement, the district court instead improperly *narrowed* the scope of the 2001 Settlement Order by preventing Mr. Hauge from selling ***any*** pressure exchanger.

15

Even if this Court agrees that a contempt finding was proper, the Contempt Order should be set aside based on the breadth of the injunction that was entered.

Finally, the district court committed error in ordering an injunction that is improper under FED. R. CIV. P. 65(d).  Under that Rule, "[e]very order granting an injunction and every restraining order…shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained."  The district court enjoined Mr. Hauge from "selling pressure exchangers and replacement parts for ERI's pressure exchangers" but failed to specify in the order what the district court considers a "pressure exchanger" to be.  Without specifying what the district court considers a "pressure exchanger," the injunction fails to satisfy the specificity required by Rule 65(d).  Therefore, the district court's injunction should be reversed and remanded.

## STANDARD OF REVIEW

With regard to procedural matters that are not uniquely of concern to this Court, this Court applies the law of the regional circuit. *See, e.g., RMT, Inc. v. Bhat Indus., Inc.*, 185 F.3d 886 (Fed. Cir. 1999). That includes the standard of review of a district court's contempt actions. *Id.* The Fourth Circuit has found that a district court's grant or denial of a civil contempt motion is reviewable for abuse of discretion. *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000).

Generally, abuse of discretion may be found when: (1) the tribunal's decision is clearly unreasonable, arbitrary, or fanciful; (2) the decision was based on an erroneous conclusion of law; (3) the tribunal's findings are clearly erroneous; or (4) the record contains no evidence upon which the tribunal rationally could have based its decision. *Abrutyn v. Giovanniello*, 15 F.3d 1048,1050-51 (Fed. Cir. 1994).

For contempt proceedings, however, courts have further found that "because of the formidable and potentially harmful nature of the contempt power, this review is more rigorous than in other contexts." *Doral Produce Corp. v. Paul Steinberg Assoc., Inc.*, 347 F.3d 36, 38 (2d Cir. 2003). Additionally, other courts have also found that review of a contempt order is more exacting than under the ordinary abuse-of-discretion standard because a district court's contempt power is narrowly circumscribed. *Perez v. Danbury Hosp.*, 347 F.3d 419, 423 (2d Cir.

2003). Furthermore, courts have found that the district court's findings of fact in connection with the civil contempt adjudication are reviewed for clear error. *Reliance Ins. Co. v. Mast Constr. Co.*, 84 F.3d 372, 375 (10th Cir. 1996) and *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999).

In proceedings relating to contempt of an injunction order in a patent infringement case, this Court has held that determination of infringement and colorable differences are factual determinations reviewed for clear error. *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 883 (Fed. Cir. 2011) (*en banc*) and *KSM Fastening Systems v. H.A. Jones Co.*, 776 F.2d 1522, 1524 (Fed. Cir. 1985). With respect to the injunction in the Contempt Order, whether the terms of the injunction fulfill the mandates of Fed. R. Civ. P. 65(d) is a question of law that this Court reviews *de novo*. *Forest Labs., Inc. v. Ivax Pharms., Inc.*, 501 F.3d 1263, 1271 (Fed. Cir. 2007); *Signtech USA Ltd. v. Vutek Inc.*, 174 F.3d 1352, 1356 (Fed. Cir. 1999).

## **ARGUMENT**

### I.  The District Court's Contempt Finding Was An Abuse of Discretion

To establish civil contempt, each of the following elements must be shown by clear and convincing evidence:(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) ... that the decree was in the movant's "favor"; (3) ... that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) ... that [the] movant suffered harm as a result.  *Ashcraft v. Conoco*, 218 F.3d 288, 301 (4th Cir. 2000); *In re General Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995).  Accordingly, to find Mr. Hauge in contempt, the district court must make a factual finding, *inter alia,* that ERI had shown by clear and convincing evidence that not only had Mr. Hauge's conduct violated the terms of the 2001 Settlement Order, but also that Mr. Hauge had knowledge of the violation.

The contempt standard is purposefully designed to create a high burden for the complaining party because contempt "is a severe remedy and should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct."  *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 881-82 (Fed. Cir. 2011) (*en banc*) (quoting *Cal. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885)).

In this case, contrary to the district court's findings, Mr. Hauge did not violate the 2001 Settlement Order but, even assuming *arguendo* that he did, he certainly did not do so knowingly.

### A.    The District Court Erred in Finding That Mr. Hauge Violated The 2001 Settlement Order

#### 1.    The Parties Contemplated that Mr. Hauge Would Compete In the Pressure Exchanger Industry

In reaching the Settlement Agreement, the parties clearly contemplated that Mr. Hauge might one future day start to sell competing devices in the pressure exchanger industry.  The Agreement transferred to ERI ownership of three U.S. Patents and one pending U.S. patent application, *to wit*: United States Patent No. 4,887,942; United States Patent No. 5,338,158; United States Patent No. 5,988,993; and United States Patent Application 09/508,694, which became United States Patent No. 6,659,731.  [JA-13.]  The Agreement also purported to transfer "all other intellectual property rights and other rights relating to pressure exchanger technology *pre-dating this Agreement*."  [*Id*. (emphasis added).]

The Agreement defines neither "other intellectual property rights" nor "other rights relating to pressure exchanger technology."  But as the transfer recites "pressure exchanger technology *pre-dating this Agreement,"* it is clear that the parties contemplated Mr. Hauge may develop pressure exchanger technology *post-dating* the Agreement.  In fact, the next sentence of the Agreement expressly

allows Mr. Hauge and the other defendants to continue to develop and maintain

ownership in intellectual property:

> This assignment and transfer of rights is not intended to extend to
> inventions by Hauge, Marissa Hauge, Hauge Technologies and
> Hermanstad made after the date of this Agreement.

[JA-16.]

Additional language in the Settlement Agreement reinforces that there was

no general prohibition against Mr. Hauge using pressure exchanger technology.

The Settlement Agreement provides that ERI "is the sole source for pressure

exchangers built pursuant to such Patents and/or Patent Applications and the

Pressure Exchanger Technology."  [JA-17.]  Identical language appears in a press

release appended to the Agreement.  [JA-32.]  This clause leads to the inescapable

conclusion that ERI is not the sole source for pressure exchangers that *are not* built

pursuant to the ERI Patents, Patent Applications and Pressure Exchanger

Technology.  Not surprisingly, the term "pressure exchanger" appears in more than

thirty different patents filed before 1987, the year that the earliest ERI patent

including the term "pressure exchanger" was filed.  As these patents pre-date the

ERI patents, they make clear that a "pressure exchanger" does not need to use, or

be made using, ERI's or any proprietary technology.

To limit competition from Mr. Hauge, built into the agreement is a non-

compete clause of fixed, but limited, duration.  Pursuant to Paragraph 5 of the

Settlement Agreement, Mr. Hauge was prohibited from making or selling an energy recovery device used in reserve osmosis salt water desalination *for two years*. [JA-18 ("Hauge agrees for a period of two (2) years from the date of the Agreement not to directly or indirectly make or sell an energy recovery device for use in reverse osmosis salt water desalination, unless first authorized in writing by Energy Recovery to do so. This restriction applies worldwide, but does not prevent Hauge from using or incorporating pressure exchangers purchased from Energy recovery into plants or projects upon which Hauge may be working.").]

The time expired under Paragraph 5 in 2003, and Mr. Hauge filed his patent application one year later. In the years that followed, the '437 patent issued from the patent application and was ultimately assigned by Mr. Hauge to the new company, Isobarix. Representing Isobarix, Mr. Hauge approached ERI about collaborating on commercializing the '437 patent. Despite Mr. Hauge's efforts to work with ERI, ERI declined to collaborate and wished Mr. Hauge success in his endeavor. Mr. Hauge then started to compete in the marketplace against ERI—just as the very terms of the Settlement Agreement allow him to do.

### 2. The District Court's Contempt Order Erroneously Relies on an Implicit Finding of Trade Secret Violation and/or Patent Infringement

A finding of contempt requires a finding by clear and convincing evidence that, among other things, "that the alleged contemnor by its conduct violated the

terms of the decree." *Ashcraft*, 218 F.3d at 301.  This necessarily means that in

order to find Mr. Hauge in violation of the Agreement, the district court had to

have concluded that there was clear and convincing evidence that he was

practicing *the same proprietary technology, i.e*., that Mr. Hauge's conduct is

infringing on the intellectual property rights that were previously transferred to

ERI.  The Contempt Order, however, rightly declined to address both the

infringement and trade secret issues because there is no cause of action for patent

infringement yet and because the trade secret issues are going forward in

California state court, respectively.  [JA-6-7.]

Without a determination of a trade secret violation, however, Mr. Hauge's

hiring of two former ERI employees because of his prior relationship with them

does not clearly and convincingly show that *the products* that they are making on

behalf of Isobarix were using, or being made using, the intellectual property that

was transferred to ERI.  Likewise, without making any finding regarding

infringement, there is no clear and convincing evidence that the Isobarix products

that practice the '437 patent also are using ERI proprietary technology.  The

district court's cite to *Ariad* makes that clear: "Obtaining a new patent does not

give the owner license to practice the patent *if it infringes on an earlier patent*."

[JA-6-7 (emphasis added).]  That was precisely Mr. Hauge's point in raising this

issue in response to the Show Cause Order—where the Settlement Agreement

expressly allowed Mr. Hauge to develop new pressure exchanger inventions, ERI was required to show that the Isobarix devices that practice the '437 patent were covered by the ERI patents to meet their burden.

In patent cases, a finding of contempt requires an inquiry into whether the accused product actually reads upon the patent or patents that formed the basis of the initial court order. *Cf. TiVo Inc. v. Echostar Corp.*, 646 F.3d 869 (Fed. Cir. 2011) (*en banc*). The approach involves a threshold inquiry into whether there are "colorable differences" between the newly accused product and the infringing product that was the subject of the injunction. *Id.* at 882. If colorable differences are found, "[c]ontempt is then inappropriate" and the accused party has the right to litigate infringement in a new trial. *Id.* This inquiry is followed in cases where a finding of contempt is sought by a party to a consent order. *See Bass Pro Trademarks, L.L.C. v. Cabela's, Inc.*, 485 F.3d. 1364 (Fed. Cir. 2007) ("The grant of a contempt order for violation, by a modified device, of an injunction against infringement requires that the modified device infringes the patent, either literally or by application of the doctrine of equivalents."); *see also Panduit Corp. v. HellermannTyton Corp.*, 451 F.3d 819 (Fed. Cir. 2006) (affirming summary judgment dismissing claim for breach of settlement agreement prohibiting sale of "all products, existing now or in the future, covered by any claim of [patent]" because new product did not infringe).

Here, the district court made no such inquiry. Not only did it refuse to inquire into the infringement of ERI's patents by Isobarix's pressure exchangers, but it also did not conduct even the threshold colorable differences inquiry. Without doing as much, the district court had no basis upon which to hold that Mr. Hauge violated the Settlement Agreement.

In light of the above, there is no clear and convincing evidence that Isobarix products that practice the '437 patent are using, or are produced using, ERI proprietary technology. Therefore, the finding that Mr. Hauge violated the district court's 2001 Settlement Order should be reversed.

### B. The District Court Erred in Finding That Mr. Hauge Knowingly Violated the 2001 Settlement Order

Even if Mr. Hauge did violate the Settlement Agreement—he did not—an examination of Mr. Hauge's actions demonstrates that he did not *knowingly* violate the order. By itself, the fact that he obtained a patent that was practiced was sufficient, in Mr. Hauge's mind, to defeat the allegations of contempt. In 2009, Mr. Hauge approached ERI—the very party with the right to enforce the 2001 Settlement Order—and ***willingly and openly*** shared his new patented invention and the corresponding patent. He also plainly disclosed his plans to manufacture a pressure exchanger employing the technology of his new patent, and discussed "the possibility of uniting all pressure exchanger technology and IP rights under

the umbrella of [ERI] and the potential benefit to those concerned."  [JA-85.]

During the meeting and in a follow-up email, Mr. Hauge represented that he was

there on behalf of the new company, Isobarix, and he *specifically identified* to ERI

the new patent that he had obtained.  *See id.* ("In those meetings I represented

Isobaric Strategies, Inc. (ISI) [Isobarix] which holds exclusive rights to

commercialization of all post ERI settlement IP developed by myself, including

but not limited to U.S. Patent 7,306,437.").  Those are not the actions of a person

who intends to flout a Court Order.

Similarly, ERI's response to the meeting was not the response of an entity

that believed that it had been wronged.  If ERI believed that production of pressure

exchangers under the '437 patent by Mr. Hauge would violate the 2001 Settlement

Order, a reasonable person would have expected ERI to cry foul, at least to Mr.

Hauge, if not to the Eastern District of Virginia.  But ERI did no such thing: at no

time during or after these discussions did anyone from ERI suggest, intimate or

otherwise contend that Mr. Hauge had violated or was about to violate the terms of

the parties' 2001 Settlement Agreement.  To the contrary, ERI's President and

CEO acknowledged that ERI gave "some of the ideas you [Hauge] have been

working on since you parted with ERI . . . careful consideration," but decided not

to go forward.  [JA-84.]

ERI considered Mr. Hauge's proposal, decided not to get involved, and wished him well.  Those are not the actions of a party that believes something has been stolen from it.  Based on the actions of both Mr. Hauge and ERI in regards to this meeting, it is clear that neither party thought that Mr. Hauge's commercialization of a pressure exchanger described by Mr. Hauge's '437 patent would violate the 2001 Settlement Order.

Nevertheless, in its Contempt Order, the district court found Mr. Hauge's statement that he did not knowingly violate the Settlement Agreement "incredible and disingenuous given [his] critical role in developing" the technology that was the subject of the Settlement Agreement.  [JA-5-6.]  Regardless of this role in the development of the technology, the district court failed to consider Mr. Hauge's state of mind about what he could and could not do *under the terms of the Settlement Agreement*.  In other words, ERI was required to show clearly and convincingly that Mr. Hauge subjectively understood the agreement to mean *what ERI now says it means*.

Even if Mr. Hauge's belief that he was entitled to practice his '437 patent alone is insufficient to establish that he did not know that he was violating the agreement, there simply was no *clear and convincing evidence* from which the district court could have concluded that Mr. Hauge thought that he was using ERI proprietary technology.  Mr. Hauge already is defending himself vigorously

27

against the misappropriation of trade secret allegations in California, and has

repeatedly disputed that he is infringing any ERI patents.  As discussed above,

there is no clear and convincing evidence that Mr. Hauge was using ERI

proprietary technology, much less clear and convincing evidence that Mr. Hauge

thought that he was using ERI proprietary technology.

    In light of the above facts, the finding that Mr. Hauge knowingly violated

the district court's 2001 Settlement Order should be reversed.

## II.  The Scope of the Injunction Awarded By the District Court Was An Abuse Of Discretion

### A. The Injunction Deprives Mr. Hauge From Doing What The 2001 Settlement Order Expressly Allowed

    The injunction awarded by the district court was an abuse of discretion

because it improperly expands the terms of the 2001 Settlement Order and imposes

obligations on Mr. Hauge that were beyond the 2001 Settlement Order's scope.

Even if this Court agrees that Mr. Hauge violated the terms of the 2001 Settlement

Order, there is still a substantial legal question about the *scope* of the injunction

that the district court awarded.  "It is axiomatic that courts may craft equitable

remedies to enforce a consent decree, but only in accordance with the terms of the

decree without altering the agreement as written."  *Perez v. Danbury Hosp.*, 347

F.3d 419, 425 (2d Cir. 2003).

In *Perez*, the court found that an injunction that expanded terms of a decree and imposed obligations on defendants that were beyond its scope was improper. *Id.* at 425. Similarly, here the Contempt Order includes an injunction that is much broader than what the parties originally contemplated in the underlying settlement. By the limiting terms of the Settlement Agreement itself, after the two year non-compete period, Mr. Hauge is free to pursue inventions across all pressure exchanger technology except that which he transferred to ERI. However, the Contempt Order includes a much broader injunction that forever enjoins Mr. Hauge from building or selling ***any*** pressure exchanger at all, not just building or selling pressure exchangers designed pursuant to ERI proprietary technology, including ERI patents and ERI trade secrets.

The district court's injunction is far more restrictive than the agreed-upon two-year non-compete clause. This expansion of the terms of the 2001 Settlement Order is an abuse of discretion that improperly imposes obligations on Mr. Hauge, and Isobarix, that are beyond the 2001 Settlement Order's scope. *See, e.g., Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.,* 96 F.3d 1390, 1395 (Fed. Cir. 1996).

### B. The Injunction in the Contempt Order is Improper For Not Defining "Pressure Exchanger"

The injunction awarded by the district court in the Contempt Order is improper as it fails to satisfy the specificity and description requirements of FED.

R. CIV. P. 65(d).  That Rule requires that "[e]very order granting an injunction and every restraining order…shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained."

"Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Schmidt v. Lessard,* 414 U.S. 473, 476, 94 (1974).  Likewise, trade secret injunctions that are too vague must be set aside. *American Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir. 1984).  By requiring specificity in injunctions, this rule relieves parties from the burden of adjudicating unwarranted contempt proceedings.  *NLRB v. Express Publ'g Co.,* 312 U.S. 426, 435-36 (1941).

In the Contempt Order, the district court enjoined Mr. Hauge from "selling pressure exchangers and replacement parts for ERI's pressure exchangers."  The district court, however, failed to specify in the order what the district court considers a "pressure exchanger" to be.  This term, "pressure exchanger," is vague without any additional definition.  In fact, ERI submitted sworn expert testimony to define this term in context of "Pressure Exchanger Technology."  ERI's expert, Dr. Lueptow, acknowledged that the Agreement does not define the term and offered an "appropriate definition"—11 years after the Agreement was executed—

based on his education, experience, study of the ERI pressure exchangers and conversations with ERI employees.  ERI itself felt compelled to offer an expert declaration regarding "pressure exchanger" because it knows this term is vague.

Without specifying what the district court considers to be a "pressure exchanger" in the order, the injunction is vague and fails to satisfy the specificity and description requirements of Fed. R. Civ. P. 65(d).  Therefore, the district court's injunction should be reversed and remanded.

## CONCLUSION

For the reasons above, Mr. Hauge respectfully requests that this Court reverse the district court's decision that Mr. Hauge was in contempt of the district court's 2001 Settlement Order and vacate the injunction imposed in the Contempt Order.


Dated:  September 16, 2013                          Respectfully Submitted,

                                                   **FISH & RICHARDSON, P.C.**

                                        By: */s/ Ahmed J. Davis*
                                             Ahmed J.  Davis
                                             Email: Davis@fr.com
                                             Richard A. Sterba
                                             Email: Sterba@fr.com
                                             1425 K Street, NW, 11th Floor
                                             Washington, DC 20005
                                             Telephone: (202) 783-5070
                                             Facsimile: (202) 783-2331

                                             *ATTORNEYS FOR*
                                             *DEFENDANT-APPELLANT*
                                             *LEIF J. HAUGE*

**ADDENDUM**



FILED

JUN 2 5 2013

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**ENERGY RECOVERY, INC.,**

   **Plaintiff,**

v.              **CIVIL ACTION NO. 2:00cv431**

**LEIF J. HAUGE, et. al,**

   **Defendants.**

### *MEMORANDUM ORDER*

  Before the Court is Plaintiff Energy Recovery, Inc.'s Motion for an Order to Show Cause

Why Defendant Leif J. Hauge Should Not be Held in Contempt for Violating This Court's

March 19, 2001 Order. On June 4, 2013, the Court held a Show Cause Hearing on the issue of

whether the Defendant is in violation of the Court's Order, and took the matter under

advisement. For the reasons discussed below, the Court **FINDS** that Leif J. Hauge is in violation

of its March 19, 2001 Order.

### I. FACTUAL AND PROCEDURAL HISTORY

  This dispute between Energy Recovery, Inc. ("ERI") and its former employee, Leif J.

Hauge ("Hauge") began more than a decade ago over the rights to pressure exchanger

technology and distribution. The parties' primary disagreement involved the ownership of

several patents and intellectual property related to pressure exchangers, a type of energy recovery

device used in reverse osmosis. On March 16, 2001, the parties entered into a settlement

agreement. On March 19, 2001, the Court issued an Order adopting the parties' agreement and

deeming ERI the sole owner of the disputed patents and intellectual property rights related to

pressure exchanger technology. Some time later, Defendant established a new company,

Isobaric Strategies, Inc. ("Isobarix"). (Pl's Mot. for Show Cause 2). Through Isobarix,

Defendant began producing an energy recovery device called a "pressure exchanger" and selling

replacement parts for ERI's pressure exchangers. *Id.* On August 10, 2004, Defendant filed and

was later approved for a patent ("Patent '734'") titled "Pressure Exchanger". Def.'s Resp. to

Show Cause Order 3. Plaintiff now alleges that Defendant Hauge has resumed use of pressure

exchanger technology, in violation of their agreement and the Court's prior Order. On

September 11, 2012, Plaintiff filed the instant Motion for Order to Show Cause.

On October 18, 2012, the Court issued an Order directing Defendant to respond.

Defendant issued a response on November 16, 2012. ERI filed its opposition on November 30,

2012. Defendant filed his reply on December 7, 2012. The Court held a Show Cause Hearing

on June 4, 2013. Accordingly, this matter is now ripe for disposition.

## II. LEGAL STANDARD

The Court's jurisdiction in the instant case is based on paragraph six of the Settlement

Agreement and "the long recognized, inherent jurisdiction of federal courts to protect and

enforce their orders and judgments." *Colonial Williamsburg Found. v. Kittinger Co.*, 792

F.Supp. 1397, 1405-1406 (E.D. Va. 1992) (citing *Riggs v. Johnson Cnty.*, 73 U.S. 166, 187

(1867)); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381-382 (1994)

(concluding that courts may retain jurisdiction over settlement agreements based on the language

of the dismissal order). Courts apply the law of the appropriate regional circuit court where, as

here, the parties' dispute raises issues that are not unique to patent law. *See Schaefer Fan Co.,*

*Inc. v. J & D Mfg.*, 265 F.3d 1282 (Fed.Cir. 2001); *MedPointe Healthcare, Inc. v. Kozachuk*, 373

F.App'x. 62, 64 (Fed.Cir. 2010) ("This court reviews a decision to enforce a settlement

agreement, an issue not unique to patent law, under the law of the appropriate regional circuit.").

According to Fourth Circuit Court of Appeals precedent, the moving party must establish the

following four elements to justify a finding of civil contempt:

> (1) the existence of a valid decree of which the alleged contemnor had actual or
> constructive knowledge;
> (2) ... that the decree was in the movant's "favor";
> (3) ... that the alleged contemnor by its conduct violated the terms of the decree,
> and had knowledge (at least constructive knowledge) of such violation; and
> (4) ... that [the] movant suffered harm as a result.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (citing *Kittinger*, 792 F.Supp. at

1405-06).   A finding of civil contempt must be established by clear and convincing evidence,

*Bradley v. Am. Household, Inc.*, 378 F.3d 373, 378 (4th Cir. 2004).   However, the court need not

make a finding that the defendant's actions were willful in order to find him in contempt of court,

*McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949).   A court may impose sanctions

for civil contempt to coerce obedience to a court order or to compensate the complainant for

losses sustained as a result of the contumacy.   *In re General Motors Corp.*, 61 F.3d 256, 258 (4th

Cir. 1995) (quoting *Connolly v. J.T. Ventures*, 851 F.2d 930, 932 (7th Cir. 1988) and citing

*United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-304 (1947)).

### III. DISCUSSION

Defendant does not dispute the existence of a valid decree.   Both parties concede that the

Court's March 19, 2001 Order incorporating their settlement agreement is the operative

document and neither party seriously contests that the Order was in ERI's favor.   *See Eyeticket*

*Corp. v. Iridian Tech., Inc.*, No. 1:00CV669, 2005 WL 2334683, at *3 (E.D. Va. September 23,

2005) ("[O]nly the portions of the agreement that the movant claims were breached need be in

the movant's favor to satisfy this element of the test.").   The main issue here is whether Hauge

knowingly violated the Court's Order.

Defendant asserts that a finding of contempt is inappropriate because he did not knowingly violate the Court's Order. First, Defendant argues that the Settlement Agreement does not include any and all after-arising inventions he makes using pressure exchanger technology. The language of the Settlement Agreement makes clear that "[t]his assignment and transfer of rights is not intended to extend to inventions by Hauge . . . made after [March 16, 2001]." Settlement Agreement 3. Defendant argues that this language permits him to design or develop *any* inventions made after the Agreement, including those using pressure exchanger technology. Defendant is correct that the Settlement Agreement does exempt any after-arising inventions Mr. Hauge creates. However, the Settlement Agreement does not give Defendant license to manufacture and sell products using the intellectual property he expressly transferred to ERI as part of their agreement. Allowing Defendant to circumvent this Court's Order and develop new products using the very technology he assigned to ERI solely because those new inventions post-date the Agreement would render the Settlement Agreement and its assignment of ownership rights useless.

Second, Defendant argues that because the Settlement Agreement contains a now expired two-year non-compete clause, the parties plainly contemplated that Hauge would return to this technology area and compete with ERI. ERI agrees that upon expiration of the non-compete, Hauge is generally free to develop and manufacture energy recovery devices. However, the terms of the entire Agreement still forbid Hauge from appropriating ERI's proprietary technology and using that technology to manufacture competing products using pressure exchanger technology. The Settlement Agreement does not restrict Hauge from returning to work in the energy recovery field. He is, however, not allowed to circumvent the Agreement by passing off the technology he assigned to ERI as his own.

Third, Defendant argues that he did not knowingly violate the Court's Order because the Settlement Agreement is ambiguous and does not specifically define which "other rights" were part of the agreement, beyond the patents and patent applications explicitly described therein. Subsection (iv) of the Settlement Agreement declares ERI sole owner of all right, title and interest in ". . . all other intellectual property and other rights relating to pressure exchanger technology predating this Order." Further, the very first paragraph of the Settlement Agreement states that the parties agree to "ABSOLUTE TRANSFER OF ALL RIGHTS IN PATENTS, PATENT APPLICATIONS AND ALL RELATED INTELLECTUAL PROPERTY, TO ENERGY RECOVERY." The Agreement further states that "all other intellectual property and other rights relating to pressure exchanger technology pre-dating this Agreement" shall belong to ERI. Settlement Agreement 3. As part of the Settlement Agreement, the parties also issued a press release stating that "ERI is the sole owner of all worldwide patents, patent applications, and intellectual property relating to the Pressure Exchanger and related technology, and that ERI is the sole source for Pressure Exchangers built pursuant to such patents, patent applications, and technology." Settlement Agreement Ex. A.

The Agreement is not ambiguous on its face. *See Land and Marine Remediation, Inc., v. BASF Corp.*, No. 2:11CV239, 2012 WL 2415552, at *7 (E.D. Va. June 26, 2012) ("Virginia adheres to a 'plain meaning' interpretation of contracts."). Furthermore, "[a] contract is not ambiguous merely because the parties disagree as to the meaning of the terms used." *Williams v. Commonwealth Real Estate Bd.,* 698 S.E.2d 917, 925 (Va. 2010)

Defendant contends that he did not "know and understand what the term 'Pressure Exchanger Technology' mean[t] within the context of the Settlement Agreement." Resp. to Show Cause 11. The Court finds this claim incredible and disingenuous given Hauge's critical

role in developing the very technology at issue and the fact that all parties were represented by competent counsel upon signing the settlement. *See* Pl's Mot. for Show Cause 3-7 ("Hauge . . . invented the pressure exchanger and helped to develop the manufacturing technology necessary to make the device commercially viable . . . .").

Defendant contends that "the fact that . . . the Patent Office allowed the patent to issue over the very intellectual property rights ERI now asserts in support of its request for a contempt finding, should end the inquiry." Def's Resp. 9. Defendant's argument is unavailing because the Patent and Trademark Office's determination as to a particular patent is certainly not dispositive on the contempt issue the Court faces here. The fact that Hauge cited ERI's patents as prior art in his '734 application is similarly unpersuasive. Obtaining a new patent does not give the owner license to practice the patent if it infringes on an earlier patent. *Ariad Pharms., Inc. v. Eli Lily & Co.*, 598 F.3d 1336 (Fed.Cir. 2010) (citing *Temco Elec. Motor Co. v. Apco Mfg. Co.*, 275 U.S. 319, 328 (1928) ("[A]n improver cannot appropriate the basic patent of another and that the improver without a license is an infringer and may be sued as such.").

Defendant further argues that the Agreement only prevents him from producing pressure exchangers *"built pursuant to such Patents and/or Patent Applications* and the Pressure Exchanger Technology." Settlement Agreement 4. Hauge interprets the Agreement to mean that he is free to build pressure exchangers not designed pursuant to ERI patents and proprietary technology. Pl's Appendix Ex. 9. As a result, Hauge asserts that the Court must necessarily conduct an inquiry into whether Hauge's new patent '437 actually infringes on the technology assigned to ERI back in 2001. The Court need not reach the infringement issue to resolve the contempt claim when Defendant's own arguments at the June 4, 2013 hearing belie his argument against contempt. Using a trade secret analogy, Defendant argued that, even after transferring

the technology and intellectual property rights to his former employer, "[i]f Mr. Hauge independently develops the same formula . . . he hasn't done anything wrong." Hr'g Tr. at 21. Although the Court expresses no judgment as to the separate issue of whether Defendant is actually infringing ERI's patents, Defendant does little to dispel any doubt that he is in fact using ERI's technology. *See* Resp. to Show Cause 13 (arguing that Hauge is not prohibited from *using* the technology because the Settlement Agreement only relates to *ownership* of the technology).

It is clear from Defendant's conduct and arguments before the Court that Hauge knowingly violated this Court's Order by attempting to appropriate the very pressure exchanger technology that formed the basis of the parties' prior dispute. After the parties signed the Settlement Agreement, Defendant established a new company, Isobarix, which produces an energy recovery device called a "pressure exchanger" and also began selling replacement parts for ERI's pressure exchangers. Perhaps most telling of Defendant's disregard for the Court's Order is his admission that he hired ERI's then-employee, Tristan Nillo, expecting to benefit from his experience working with ERI's pressure exchanger technology. Hauge Opp. 6. (noting that "past employees of ERI, like Nillo are skilled trade persons . . . and of course no one would hire at this cost and expect no benefit from past work experience."). Hauge further admits that he sought out Nillo and another employee "[b]ecause throughout their initial employment in '98, '99 when I was the president of [ERI], we basically went through the complete setup of commercial production. And what we were about to do was pretty much all over again doing what I did in '98. . . ." Hauge Dep. at 105-106.[1]

Finally, Defendant argues that it would be premature to find him in contempt due to the dilatory nature of ERI's allegations and the likely impact the Court's ruling would have on the

---

[1] The Court expresses no opinion as to the claims asserted in the parties' ongoing litigation in California state court.

parties' pending trade secret litigation in California state court. Based on ERI's belief that Hauge "surreptiously employ[ed] two then current ERI employees, Tristan Nillo and . . . James Coyle, to help him make a pressure exchanger at Isobarix," ERI filed a complaint in the Superior Court of California alleging breach of loyalty and misappropriation of trade secrets. Pl's Mot. to Show Cause 10. ERI added a claim for breach of the Settlement Agreement, but later dropped the claim. Defendant argues that a finding of contempt by this Court would risk violating principles of comity. The Court certainly recognizes that disposition of this matter raises concerns about comity, however the Court's sole inquiry at this juncture is whether Hauge's conduct violated this Court's March 19, 2001 Order.

Enforcement of an injunction through a contempt proceeding must occur in the issuing jurisdiction because contempt is an affront to the court issuing the order. *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985) (citation omitted). The overriding interest in enforcing this Court's orders weighs against abstention. Further, the Court need not decide that the technology at issue involves trade secrets under state law. The Court is not convinced that its findings on the contempt issue relating to the 2001 dispute would necessarily prejudice the state proceeding involving Hauge's alleged "secreting away" employees a decade later.

The Court finds that Defendant has violated the letter and spirit of the Settlement Agreement, and in doing so he has inflicted harm upon ERI. Plaintiff has met its burden and shown, by clear and convincing evidence, that Defendant is in contempt of the Court's Order. Accordingly, the Court FINDS that Defendant has violated its March 19, 2001 Order and holds him in contempt thereof.

## IV.  CONCLUSION

For the foregoing reasons, the Court **FINDS** Defendant Leif J. Hauge in contempt of the Court's March 19, 2001 Order.  The Court **ENJOINS** Defendant from further violating the March 19, 2001 Order and Settlement Agreement.  Defendant is prohibited, whether through Isobarix or any other person or entity, from manufacturing and selling pressure exchangers and replacement parts for ERI's pressure exchangers.  The Court further **FINDS** that Defendant's conduct was not merely "negligent and careless" and awards attorney's fees accordingly.  *See Omega World Travel*, 710 F.Supp 169, 173 (E.D. Va. 1989).  Plaintiff is **ORDERED** to file a request for damages and reasonable attorney's fees within thirty (30) days of the date of this Order.  Defendant may respond within 15 days of Plaintiff's filing, if he so chooses.

The Court **DIRECTS** the Clerk to send a copy of this Order to the parties.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
June 24, 2013

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ENERGY RECOVERY, INC.,

     Plaintiff,

v.

LEIF J. HAUGE and
ENERGY RECOVERY INTERNATIONAL, INC.,

     Defendants.

**FILED**

MAR 1 9 2001

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

Civil Action No. 2:00cv431

**ORDER**

Upon joint submission of the parties, the Court ORDERS, ADJUDGES and DECREES as follows:

1.    Plaintiff, Energy Recovery, Inc. ("ERI") is the sole owner of all right, title, and interest in: (i) the patents and patent applications described below; (ii) any and all patent rights (including without limitation, the right to sue for any past infringement), intellectual property rights, property rights and all other rights in the below described patents and patent applications, in all patents and applications based on these patents and patent applications, and applications based on improvements or inventions related to the pressure exchanger disclosed prior to the date of this Order, whether or not conceived, developed, owned, and/or controlled by Leif J. Hauge, Hauge Technologies, Inc. (f/k/a Energy Recovery International, Inc.), Energy Recovery, Inc., and/or Ragnar Hermanstad; (iii) all associated filings and related patents; and (iv) all other intellectual property and other rights relating to pressure exchanger technology predating this Order. The referenced patents and patent applications include, but are not limited to:

    a.    Norwegian Application Serial No. NO870016, corresponding to International Application Serial No. PCT/NO87/00086, and United States Letters Patent No.

4,887,942;

      b.      Norwegian Application Serial No. NO894392, corresponding to International Application Serial No. PCT/NO90/00162, and United States Letters Patent No. 5,338,158;

      c.      Norwegian Application Serial No. NO944558, corresponding to International Application Serial No. PCT/NO95/00219, and United States Letters Patent No. 5,988,993;

      d.      Norwegian Application Serial No. NO974542, corresponding to International Application Serial No. PCT/NO98/00290, and U.S. Application Serial No. 09/508,694;

      e.      Norwegian Application Serial No. NO20001877.

This Order is not intended to transfer rights to any inventions made by Leif J. Hauge, Hauge Technologies, Inc., Marissa A. Hauge, and/or Ragnar A. Hermanstad after the date of this Order. ERI's right to sue for past infringement shall not include the right to sue Leif J. Hauge, Hauge Technologies, Inc., Marissa A. Hauge, or Ragnar A. Hermanstad, as to each of whom releases have been made, nor does ERI's right to sue for past infringement include suits or claims against Bermuda Water Works, Ltd., Malta Desalinization Services, or Toyobo Company, Ltd., for the purchase or use of pressure exchangers purchased prior to the date of this Order.

      2.      The terms of the Settlement Agreement attached hereto as **Exhibit A** are hereby incorporated into this Order as if fully set forth herein; accordingly, upon proper notice to the parties to the Settlement Agreement and proof of a material breach of the terms of **Exhibit A**, such breach[es] shall be punishable by this Court's contempt powers.

      3.      This action is hereby DISMISSED, with prejudice, except that this Court retains

2

jurisdiction to the extent necessary to enforce the terms set forth and/or incorporated above.

It is so ORDERED.

_March 19, 2001_
Date

_____
United States District Judge

WE ASK FOR THIS:

ENERGY RECOVERY, INC.

By _____
     Of Counsel
Stephen E. Noona
  VSB No. 25367
Scott W. Kezman
  VSB No. 36831
Windley Hofler Walden
  VSB No. 43279
Kaufman & Canoles, P.C.
2000 Bank of America Center
One Commercial Place
Norfolk, Virginia 23510
(757) 624-3000

#672517 v2 - eri/hauge/order/mmt

LEIF J. HAUGE,
HAUGE TECHNOLOGIES, INC. (f/k/a)
ENERGY RECOVERY INTERNATIONAL, INC.

By _____
     Of Counsel

Glen A. Huff
  VSB No. 16272
Paul E. McGowan
  VSB No. 41707
Huff, Poole, Mahoney, P.C.
4705 Columbus Street
Virginia Beach, Virginia 23462
(757) 499-1841

3

## SETTLEMENT AND RELEASE AGREEMENT

THIS SETTLEMENT AND RELEASE AGREEMENT ("Agreement") is made this _16th_ day of _March_ 2001, by and among Energy Recovery, Inc., a Virginia corporation, ("Energy Recovery"), Leif J. Hauge ("Hauge"), Marissa A. Hauge ("Marissa Hauge"), Hauge Technologies, Inc., f/k/a Energy Recovery International, Inc., a Delaware company, ("Hauge Technologies"), and Ragnar A. Hermanstad ("Hermanstad").

### RECITALS:

A.     On January 29, 2000, a dispute developed between Hauge and Energy Recovery, resulting in Hauge leaving the company. Thereafter, Hauge formed a new corporation, Energy Recovery International, Inc., which subsequently changed its name to Hauge Technologies, Inc. ("Hauge Technologies" hereinafter shall refer to both Energy Recovery International, Inc. and Hauge Technologies). Thereafter, Hauge contended that he assigned the following patents and patent applications to Hauge Technologies and recorded that assignment in the United States Patent and Trademark Office:

(1)     Norwegian Application Serial No. NO870016, corresponding International Application Serial No. PCT/NO87/00086, and U.S. Letters Patent No. 4,887,942;

(2)     Norwegian Application Serial No. NO894392, corresponding International Application Serial No. PCT/NO90/00162, and United States Letters Patent No. 5,338,158;

(3)     Norwegian Application Serial No. NO944558, corresponding International Application Serial No. PCT/NO95/00219, and United States Letters Patent No. 5,988,993; and

(4)     Norwegian Application Serial No. NO974542, and corresponding International Application Serial No. PCT/NO98/00290, along with U.S. Application No. 09/508,694, filed March 29, 2000.

B.    As a result of this dispute, Energy Recovery filed an action in the Circuit Court for the City of Virginia Beach, Virginia styled <u>Energy Recovery, Inc. v. Leif J. Hauge, Marissa A. Hauge, and Energy Recovery International, Inc.</u>, Chancery No. CH00-1003 ("State Action") and additionally an action in the United States District Court for the Eastern District of Virginia, Norfolk Division styled <u>Energy Recovery, Inc. v. Leif J. Hauge and Energy Recovery International, Inc.</u>, Civil Action No. 2:00cv431 ("Federal Action").  In response, Hauge and Hauge Technologies filed numerous counterclaims against Energy Recovery (the "Counterclaims") in both actions.  Plaintiffs and Defendants each denied the others' respective claims.  Additionally, Energy Recovery brought a third party motion for judgment against Hauge in the Circuit Court for the County of Northampton, Virginia styled <u>Joint Industrial Development Authority of Northampton County and Towns v. Energy Recovery, Inc., CL 00-12</u>, which motion for judgment was subsequently non-suited by Energy Recovery and has not been re-filed.

—  C.    In addition to the above, a dispute also has arisen between Energy Recovery, Hauge, Hauge Technologies and Hermanstad regarding Norwegian Patent Application Serial No. NO20001877 filed in Norway on April 11, 2000 by Hermanstad ("Hermanstad Patent Application").  Hermanstad subsequently assigned the Hermanstad Patent Application to Hauge Technologies (collectively, the aforementioned patents and patent applications set forth in paragraphs A through C, as well as any corresponding patents and patent applications worldwide based on these patents and patent applications or disclosing any improvements or inventions related to any pressure exchanger or pressure exchanger technology which improvements or inventions were developed prior to the date of this Agreement, shall be referred to collectively as the "Patent and Patent Applications").

D.    In lieu of further litigation regarding, but not limited to, the matters referred to in

2

paragraphs A and B, between Energy Recovery and Hauge, Marissa Hauge, and Hauge Technologies and/or the initiation of litigation between Energy Recovery and Hauge, Hauge Technologies and Hermanstad with respect but not limited to Norwegian Patent Application Serial No. NO20001877 and/or other matters referenced in paragraph C, the parties have agreed to compromise, settle, and resolve their disputes as more fully set forth in this Agreement.

## AGREEMENT:

For and in consideration of the mutual covenants and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    ABSOLUTE TRANSFER OF ALL RIGHTS IN PATENTS, PATENT APPLICATIONS AND ALL RELATED INTELLECTUAL PROPERTY, TO ENERGY RECOVERY.  To the extent not already owned by Energy Recovery, Hauge, Marissa Hauge, Hauge Technologies, and Hermanstad, individually and collectively, agree and hereby irrevocably and absolutely assign to Energy Recovery all right, title and interest along with any and all patent rights (including, without limitation, the right to sue for any past infringement), intellectual property rights, property rights and all other rights which they have or may have in: (i) the Patents and Patent Applications; (ii) all patents and applications based on the Patents and Patent Applications, and applications based on improvements to the pressure exchanger which predate this Agreement, as well as all associated filings and related patents wherever filed throughout the world; and (iii) all other intellectual property and other rights relating to pressure exchanger technology pre-dating this Agreement ("Pressure Exchanger Technology").  This assignment and transfer of rights is not intended to extend to inventions by Hauge, Marissa Hauge, Hauge Technologies and Hermanstad made after the date of this Agreement.  Energy

3

Recovery's right to sue for past patent infringement shall not include the right to sue Hauge or Hauge Technologies as set forth in paragraph 10 of this Agreement or to sue Bermuda Water Works, Ltd., Malta Desalinization Services, or Toyobo Company, Ltd. for the purchase or use of pressure exchangers purchased prior to the date of this Agreement.

Hauge, Marissa Hauge, Hauge Technologies, and Hermanstad, individually and collectively, further agree to use their best efforts and to cooperate fully in executing any and all documents necessary to prosecute, assign, record, perfect, and/or maintain the Patents and/or Patent Applications in Energy Recovery's name or for Energy Recovery's benefit in the United States and throughout the world. The parties also agree to issue the joint statement attached and incorporated by this reference as **Exhibit A** stating that they have reached a satisfactory settlement and resolution of their disputes, that Energy Recovery is the sole owner of the Patents and Patent Applications, and that Energy Recovery is the sole source for pressure exchangers built pursuant to such Patents and/or Patent Applications and the Pressure Exchanger Technology.

2.    <u>TRANSFER OF HAUGE'S ENERGY RECOVERY STOCK</u>. Hauge agrees and hereby irrevocably transfers and assigns all right, title, and interest which he may have in all 35,806 shares of Energy Recovery stock (including, without limitation, Certificate Nos. 97, 6, 186, and 191) ("Hauge's Energy Recovery Stock"), which constitutes all of the Energy Recovery stock he presently owns, to Energy Recovery, who agrees to redeem Hauge's stock. Hauge agrees to execute the stock power agreement attached as **Exhibit B,** to deliver Hauge's Energy Recovery Stock to Energy Recovery, and to use his best efforts and cooperate fully in executing any and all additional documents necessary to transfer Hauge's Energy Recovery Stock to Energy Recovery.

4

3.    PAYMENT BY ENERGY RECOVERY.  On or before the close of business on March 7, 2001, Energy Recovery shall pay the sum of One Hundred Fifty Thousand and no/100 Dollars ($150,000) to Hauge and shall pay the additional sum of One Hundred Fifty Thousand and no/100 Dollars ($150,000) (collectively, both payments shall be referred to as "Settlement Funds") jointly to Hauge and Huff, Poole & Mahoney, P.C.  If, through no delay caused by Energy Recovery or its representatives, the requisite assignments, conveyances, and transfers referenced in Paragraphs 1 and 2 are not executed and in possession of Huff, Poole and Mahoney, P.C. on or before March 7, 2001, Energy Recovery shall pay the Settlement Funds to Kaufman & Canoles, P.C. to be held in trust until all such documents are executed and delivered to Energy Recovery.  The parties agree that no other payments from Energy Recovery to Hauge and/or his assignees and/or his attorneys or from Hauge to Energy Recovery and/or their assignees and/or its attorneys are thereafter due, for any reason, and that each party to this Agreement is responsible for their own attorneys' fees and costs.

4.    TRANSFER OF PERSONAL PROPERTY.  Energy Recovery agrees to convey to Hauge those items of personal property which are still in its possession listed **Exhibit C**. Similarly, Hauge agrees to convey to ERI those items of personal property listed on **Exhibit C**.

5.    COVENANT NOT TO COMPETE.  Hauge agrees for a period of two (2) years from the date of this Agreement not to directly or indirectly make or sell an energy recovery device for use in reverse osmosis salt water desalination, unless first authorized in writing by Energy Recovery to do so. This restriction applies worldwide, but does not prevent Hauge from using or incorporating pressure exchangers purchased from Energy Recovery into plants or projects upon which Hauge may be working.

6.    ENTRY OF COURT ORDERS.  The parties agree that promptly upon the

5

payment of the Settlement Funds referenced in Paragraph 3 above and conveyance of the Patents, Patent Applications, Hauge's Energy Recovery Stock and other items referenced in Paragraphs 1, 2, and 4 above, the orders attached and incorporated as **Exhibits D and E** to this Agreement shall be presented for entry to the appropriate court. The orders shall incorporate the terms of this Agreement as if fully set forth therein and shall dismiss all pending matters between the parties with prejudice except that the United States District Court for the Eastern District of Virginia (the "Norfolk Federal Court") shall retain jurisdiction for the enforcement of this Agreement, which jurisdiction and enforcement power shall be specifically incorporated in **Exhibit D**. With respect to <u>Joint Industrial Development Authority of Northampton County and Towns v. Energy Recovery, Inc., CL 00-12</u>, Energy Recovery hereby covenants and agrees not to refile and/or reinstitute its third party motion for judgment in such matter. All parties to this Agreement expressly acknowledge and consent to the personal jurisdiction (both *in personam* and *in rem* jurisdiction) and venue of the Norfolk Federal Court for any claims arising out of or related to this Agreement.

7.    <u>RELEASE FROM PERSONAL GUARANTIES</u>.    Energy Recovery agrees to exercise immediate good faith efforts to obtain the release of Hauge from any and all personal guaranties for Energy Recovery debt, including, without limitation, the personal guaranty issued by Hauge for Energy Recovery's commercial loan with SunTrust Bank, account number 193063. Hauge shall be entitled to copies of any and all documents by which ERI or its representatives seek release of the guaranties. Nothing herein shall be construed to suggest that Hauge has assumed or undertaken responsibility or obligations for any such loan and guaranties.

8.    <u>EFFECT OF BANKRUPTCY</u>.    The parties agree in the event that Energy Recovery files for protection under the United States Bankruptcy Laws within any period of time

6

that would place payment of the Settlement Funds under this Agreement within a voidable preference period, Hauge's covenant not to compete set forth in Paragraph 5 will no longer be valid or binding against Hauge.

9.     REPRESENTATIONS.  The parties, individually and collectively, represent and warrant that:

(a)     They have not assigned, pledged, transferred, sold, conveyed, hypothecated, encumbered, licensed, or otherwise transferred the Patents and/or Patent Applications or their contents, or the Pressure Exchanger Technology, the Released Claims (as defined in paragraph 10) and/or Hauge's Energy Recovery Shares, or disclosed the Patents and/or Patent Applications or their contents prior to their respective filing such that they, individually and/or collectively, are or would be prohibited from granting the assignments, transfers and/or releases as provided in this Agreement;

(b)     They have not assigned, pledged, transferred, sold, conveyed, hypothecated, encumbered, licensed, or otherwise transferred or disclosed to any unauthorized person or entity any Energy Recovery Pressure Exchanger Technology and/or any confidential or proprietary information of Hauge Technologies or Energy Recovery and have not disclosed the Patents and/or Patent Applications or their contents prior to their respective filing except as required by or in accordance with the law.

(c)     To the best of their knowledge, the Patents and all associated patent filings worldwide are valid and enforceable and no actions are pending and/or contemplated to in any way impair the validity and enforceability of such Patents and all associated patent filings;

(d)     This Agreement is undertaken voluntarily and with full awareness of their legal rights after consultation with legal counsel;

7

(e)    The statements and representations by them in this Agreement are true and correct in all material respects and they are aware that the other parties are relying on those statements and representations in executing and entering into this Agreement;

(f)    They each have all requisite right, power and authority to execute and deliver and to perform all of their respective obligations under this Agreement and all instruments and other documents made, executed and delivered by them in connection with this Agreement.  They each have done nothing to prevent, nor are they aware of any legal proceedings, arbitration actions or governmental investigations pending or similar proceedings threatened against them which would prohibit or enjoin, the consummation of the transactions contemplated by this Agreement.  Nor are they aware of any other legal impediment to the releases, transfers or assignments provided for in this Agreement;

(g)    The execution, delivery and performance of this Agreement has been duly authorized by all necessary action and does not, and will not, require any consent or approval of any person that has not already been obtained; and

(h)    They are responsible for only their own respective tax consequences or other related financial obligations resulting from the payments and transfers set forth above.

10.    MUTUAL RELEASES.  As a material inducement for the parties to enter into this Agreement, the parties, individually and collectively, irrevocably and unconditionally release, discharge and forever waive and relinquish each other from any of the following: any and all claims, demands, actions, causes of action, defenses, counterclaims, liabilities, obligations, debts, damages, costs or expenses (including attorneys' fees and costs actually incurred) or setoffs of any kind or nature which each, individually and/or collectively, now has, can have or may have against each other, individually and/or collectively, whether known or

8

unknown, in law or equity, by reason of any act, omission or fact occurring prior to the execution of this Agreement (collectively, hereinafter shall be referred to as "Released Claims"). This release shall, in no way, release any of the obligations and/or rights set forth under this Agreement or preclude an action to enforce this Agreement and/or remedy a breach of the terms of this Agreement. Nothing in this Agreement shall constitute an admission of fault or liability and the parties expressly deny all such alleged fault or liability.

11.  HAUGE SIGNATORIES DEFINED.  The terms "Hauge," "Marissa Hauge," "Hauge Technologies," and "Hermanstad," shall include, but not be limited to, the individual or entity named or listed and all its past, present and future partners, officers, directors, employees, agents, attorneys, and their respective affiliates, subsidiaries, predecessors and successors in interest or otherwise, successors, assigns and/or heirs of any of the foregoing and any person, firm, entity or corporation for which they may be legally responsible or which may be legally responsible for them.

12.  ENERGY RECOVERY DEFINED.  The term "Energy Recovery" shall include, but not be limited to, Energy Recovery and its past, present and future partners, officers, directors, employees, agents, attorneys, and its respective predecessors and successors in interest or otherwise, subsidiaries, including, without limitation, Energy Recovery's wholly owned subsidiary Hauge International A/S, successors or assigns of any of the foregoing and any person, firm, entity or corporation for which it may be legally responsible or which may be legally responsible for it.

13.  COUNSEL DISCUSSIONS.      EACH   PARTY   REPRESENTS   AND WARRANTS THAT THEY: (a) WERE REPRESENTED BY INDEPENDENT COUNSEL OF THEIR CHOICE, WHICH COUNSEL HAS REVIEWED THIS AGREEMENT AND HAS

9

ADVISED EACH OF THEM OF ITS CONTENTS AND MEANING; OR (b) WERE URGED

BY THE OTHER TO OBTAIN COUNSEL AND CHOSE NOT TO RETAIN COUNSEL.

EACH PARTY FURTHER REPRESENTS AND WARRANTS THAT THEY ARE SIGNING

THIS AGREEMENT VOLUNTARILY AND WITH FULL UNDERSTANDING OF ITS

CONTENTS AND MEANING.

14.    DEFAULT.  In the event that:  (a) default by any party occurs in the performance

of any of the covenants or obligations under this Agreement; or (b) any of the recitals,

representations or warranties of any party set forth in this Agreement is determined to be false,

then the nondefaulting party(ies) immediately may pursue the remedies, legal and equitable,

available to it (them).

15.    SURVIVAL  OF  REPRESENTATIONS  AND  WARRANTIES.    The

representations, warranties and covenants of the parties contained in this Agreement shall

survive the consummation of the transactions contemplated in this Agreement.

16.    FURTHER ASSURANCES.  The parties shall each make, execute and deliver to

the other all further documents or instruments reasonably requested by either of them in order to

effect the intent, and to obtain the full benefit, of this Agreement, including, without limitation,

all documents and actions necessary to prosecute, assign, record, perfect and/or maintain the

Patents and/or Patent Assignments as specified in Paragraph 1 of this Agreement.  Any request

by any party under Paragraph 16 of this Agreement shall be accompanied by the document

proposed for signature by the party requesting it, in form and substance satisfactory to the party

of whom the request is made and their respective attorneys.  The party making the request shall

bear and discharge any fees or expenses incident to the preparation, filing or recording of

documents requested pursuant to Paragraph 16 of this Agreement.

10

17.    GOVERNING LAW.  This Agreement shall be governed by and interpreted in accordance with the laws of the Commonwealth of Virginia.

18.    ENTIRE AGREEMENT.  THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.  The parties make no representations or warranties to each other, except as contained in this Agreement or in the accompanying exhibits or the certificates or other closing documents delivered according to this Agreement.    All prior agreements and understandings between the parties to this Agreement with respect to the transactions contemplated by this Agreement, whether verbal or in writing, are superseded by, and are deemed to have been merged into, this Agreement which shall be binding on, and inure to the benefit of, the parties to this Agreement and their respective successors and assigns.

19.    MODIFICATIONS.  This Agreement may not be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against which enforcement of such change, waiver, discharge or termination is sought.  This Agreement is a negotiated agreement and the parties acknowledge that the language used in this agreement shall not be construed presumptively against any of the parties.

20.    SEVERABILITY.  If any provision of this Agreement shall be determined to be invalid, illegal or unenforceable, to the greatest extent possible, the balance of this Agreement shall remain in full force and effect and if any provision is inapplicable to any person or circumstance, to the greatest extent possible, it shall nevertheless remain applicable to all other persons and circumstances.

21.    NOTICES.  All notices between the parties shall be in writing and shall be served either personally, by certified mail or by overnight courier services.  If served personally, notice shall be deemed given or made at the time of such service.  If served by certified mail, notice shall be presumed given and made three (3) business days after deposit in the United States mail, postage prepaid, addressed to the party to whom the notice is to be given or made.

All notices shall be given at:

(a)    If to Energy Recovery, to:

Stephen E. Noona, Esq.
Scott W. Kezman, Esq.
Kaufman & Canoles, P.C.
One Commercial Place
Norfolk, VA 23510

(b)    With a copy to:

Mr. James M. Medanich
Energy Recovery, Inc.
1908 Dolittle Drive
San Leandro, CA 94577

(c)    If to Hauge, Marissa Hauge, Hauge Technologies, or Hermanstad, to:

Glen A. Huff, Esq.
Huff, Poole & Mahoney, P.C.
4705 Columbus Street,
Virginia Beach, VA 23462-6749

(d)    With a copy to:

Leif J. Hauge
1808 Eden Way
Virginia Beach, VA 23454

22.    REFERENCES IN THIS AGREEMENT.  Whenever the context of this Agreement requires, references to the singular number shall include the plural, and the plural shall include the singular, where appropriate; words denoting gender shall be construed to

12

include the masculine, feminine and neuter where appropriate; and specific enumeration shall not exclude the general, but shall be considered as cumulative.

23.     COUNTERPARTS.  This Agreement may be signed in one or more counterparts, each of which shall be deemed an original.

The undersigned have duly executed this Settlement and Release Agreement in the names and under the seals of the undersigned and with the intent that this be a sealed instrument, as of the date above.

ENERGY RECOVERY:

Energy Recovery, Inc., a Virginia corporation

By _Lowell M. Dicke_

(SEAL)

Name: _Lowell M. DICKE_
Title: _Chairman of the Board_

13

STATE OF CALIFORNIA    )
                       ) ss.
COUNTY OF _Alameda_    )

EVELYN M. CLARK
Commission # 1293449
Notary Public - California
Alameda County
My Comm. Expires Mar 5, 2005

On _3-6-2001_ before me, _Evelyn M. Clark_, Notary
Public, personally appeared _Lowell Ma Dicke_,

_____ personally known to me

or
___ᴸ___ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged
to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal

_Evelyn M. Clark_
SIGNATURE OF NOTARY PUBLIC

(SEAL)

My Commission Expires: _3-5-2005_

HAUGE:

Leif J. Hauge

By:_____

(SEAL)

14

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF _____    )

    On _____ before me, _____, Notary
Public, personally appeared _____,

_____ personally known to me

    or

_____ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged
to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

    WITNESS my hand and official seal

_____
            SIGNATURE OF NOTARY PUBLIC

(SEAL)

My Commission Expires:

           HAUGE:

           Leif J. Hauge

           By: _____

(SEAL)

14

COMMONWEALTH OF VIRGINIA
AT LARGE, to-wit:

The foregoing instrument was acknowledged before me in the City of
_Virginia Beach_____, Virginia, this _5th_ day of _March_____ 2001, by Leif J.
Hauge.

_Linda J. White_
Notary Public

(SEAL)

My Commission Expires: _2/8/02_

MARISSA HAUGE:

By:_____

(SEAL)

COMMONWEALTH OF VIRGINIA
AT LARGE, to-wit:

The foregoing instrument was acknowledged before me in the City of
_Virginia Beach_____, Virginia, this _7th_ day of _March_____ 2001, by Marissa A.
Hauge.

_Linda J. White_
Notary Public

(SEAL)

My Commission Expires: _2/28/02_

HAUGE TECHNOLOGIES:

Hauge Technologies, Inc., f/k/a Energy Recovery
International, Inc., a Delaware corporation

By:_____

(SEAL)

Name: _LEIF V. HAUGE_
Title: _PRESIDENT_

15

COMMONWEALTH OF VIRGINIA
AT LARGE, to-wit:

The foregoing instrument was acknowledged before me in the City of
_Virginia Beach_____, Virginia, this _5th_ day of _March_ 2001, by
_Lorf J. Hauge_ on behalf of Hauge Technologies, Inc. f/k/a Energy Recovery International, Inc.

_Linda J. White_
Notary Public

(SEAL)

My Commission Expires: _2/28/02_

16

HERMANSTAD:

Ragnar A. Hermanstad

By: _Ragnar Hermanstad_

(SEAL)

NORWAY
AT LARGE, to-wit:

     I hereby certify that this document bears the signature of Ragnar A. Hermanstad and that he has certified its contents before me according to Norwegian law in the City of _Hitra_ , Norway, this _tues_ day of _6/3_ — 2001.

_Geir Morten Stubban_
Notary Public

(SEAL)

My Commission Expires:

#669113 v7 – sr:\hauge\stl\agr\rmnt

17

### FOR IMMEDIATE RELEASE

### ENERGY RECOVERY, INC. RESOLVES DISPUTE WITH FOUNDER

Norfolk, VA – March 7, 2001 -- Energy Recovery, Inc. ("ERI"), and its founder and former CEO, Leif J. Hauge, who invented the Pressure Exchanger, are pleased to report that they have satisfactorily resolved all matters in dispute resulting from Mr. Hauge's departure from the Company last year. The resolution between ERI and Mr. Hauge confirms that ERI is the sole owner of all worldwide patents, patent applications  and intellectual property relating to the Pressure Exchanger and related technology, and that ERI is the sole source for Pressure Exchangers built pursuant to such patents, patent applications, and technology. This has been memorialized by a court order resolving all litigation between ERI and Hauge.

The Pressure Exchanger is an energy recovery device utilizing the principle of direct contact positive displacement between fluids. This product is a key to dramatically reduced operational cost for any size salt water reverse osmosis desalination plant. The Pressure Exchanger is made entirely of ceramic and composite materials with only one moving part, ensuring ultimate reliability.

Energy Recovery, Inc.

By_____
      James M. Medanich

Contact:
James M. Medanich
Energy Recovery, Inc.
1908 Dolittle Drive
San Leandro, CA 94577
(510) 483-7370
www.energy-recovery.com

Leif J. Hauge

_____
      Leif J. Hauge

Contact:
Leif J. Hauge
Hauge Technologies, Inc.
301 Patrick Henry Avenue
Cape Charles, VA 23310
(757)331-4400
www.haugetechnologies.com

#669630 v3 - hauge/press/release

EXHIBIT

A

**FOR IMMEDIATE RELEASE**

## ENERGY RECOVERY, INC. RESOLVES DISPUTE WITH FOUNDER

Norfolk, VA – March 7, 2001 -- Energy Recovery, Inc. ("ERI"), and its founder and former CEO, Leif J. Hauge, who invented the Pressure Exchanger, are pleased to report that they have satisfactorily resolved all matters in dispute resulting from Mr. Hauge's departure from the Company last year. The resolution between ERI and Mr. Hauge confirms that ERI is the sole owner of all worldwide patents, patent applications and intellectual property relating to the Pressure Exchanger and related technology, and that ERI is the sole source for Pressure Exchangers built pursuant to such patents, patent applications, and technology. This has been memorialized by a court order resolving all litigation between ERI and Hauge.

The Pressure Exchanger is an energy recovery device utilizing the principle of direct contact positive displacement between fluids. This product is a key to dramatically reduced operational cost for any size salt water reverse osmosis desalination plant. The Pressure Exchanger is made entirely of ceramic and composite materials with only one moving part, ensuring ultimate reliability.

Energy Recovery, Inc.                                    Leif J. Hauge

By _____                    _____
    James M. Medanich                                         Leif J. Hauge

Contact:                                                        Contact:
James M. Medanich                                       Leif J. Hauge
Energy Recovery, Inc.                                   Hauge Technologies, Inc.
1908 Dolittle Drive                                       301 Patrick Henry Avenue
San Leandro, CA 94577                                Cape Charles, VA 23310
(510) 483-7370                                            (757)331-4400
www.energy-recovery.com                           www.haugetechnologies.com

#669630 v3 - hauge/press/release

*IRREVOCABLE STOCK POWER*

FOR VALUE RECEIVED, LEIF J. HAUGE hereby sells, assigns and transfers unto:

ENERGY RECOVERY, INC. thirty-five  thousand eight hundred and six (35,806) shares

of the Common Capital Stock of ENERGY RECOVERY, INC. standing in his name on the

books of said Corporation represented by Certificate Nos. 6, 97, 186, 191 herewith and does

hereby irrevocably constitute and appoint T. Richard Litton attorney to transfer the said

stock on the books of the within named Corporation with full power of substitution in the

premises.

DATED: _March 5_ , 2001

_____
Leif J. Hauge

In the Presence of:

_____

COMMONWEALTH OF VIRGINIA
CITY/~~COUNTY~~ OF _Virginia Beach_ to-wit;

  SUBSCRIBED AND SWORN TO before me, a Notary Public for the
Commonwealth of Virginia, on this _5th_ day of March 2001 by Leif J. Hauge.

_____
Notary Public

My Commission Expires: _4/28/02_

#669655

EXHIBIT

B

## EXHIBIT C

Property to be Returned by ERI:

1.      Small PE made of brass in 1986-NorwayOD 4", L=7."

2.      Various prototype materials depicted in the digital photographs attached as **Exhibits 1 and 2** to be made available at ERI in California upon reasonable notice. Hauge agress to bear all expenses associated with packing and shipping of these items.

3.      Various small sized stainless rotor and sleeve assemblies and end covers with or without ceramic inserts.

4.  --   Four posters made for the Madrid conference 1997 that previously hung in hallway of Woodlake office.

5.      Aerial view of Sustainable Technologies Industrial Park first building with signatures on (both signed and unsigned, without frames).

6.      Norwegian NHL-prototype (approximately 65 lbs.);

7.      What appears to be a Newport News Shipbuilding Prototype (approximately 500 lbs. in several pieces) to be made available at ERI in California upon reasonable notice. Hauge to bear all expenses associated with packing and shipping.

Hauge agrees that he has inspected all of these items or their photographs (with the exception of No. 7, which is to be accepted without inspection,) and agrees that they represent all of the items to be returned by ERI under paragraph 4 of the Settlement Agreement and Release.

Property to be Returned by Hauge:

1.      1990 Range Rover company automobile.

2.      Two (2) laptops of Toshiba brand (one already in Kaufman & Canoles' possession).

3.      Sailboat and trailer belonging to company.

All such items referenced on this schedule are to be made available as is, where is and without warranty or representation of any kind including, without limitation, their condition or fitness for any particular purpose.

#674145 v1 - eri/hauge/exh/c/mmt



EXHIBIT

"C"





VIRGINIA:  IN THE CIRCUIT COURT FOR THE CITY OF VIRGINIA BEACH

ENERGY RECOVERY, INC., a       :
Virginia corporation

      Complainant,       :

                     :

v.                        :       Chancery No. CH001003

                     :

LEIF·J. HAUGE,          :
MARISSA A. HAUGE       :
and
ENERGY RECOVERY INTERNATIONAL, INC. :

### ORDER

Upon joint submission of the parties, the Court ORDERS, ADJUGES and DECREES as follows:

     1.      This matter be DISMISSED, with prejudice, and on terms and conditions set forth in the final order Civil Action No. 2:00cv431, in the United States District Court for the Eastern District of Virginia, Norfolk Division.

It is so ORDERED.

Entered:_____

          Date                                      Judge



**EXHIBIT**

D

WE ASK FOR THIS:

ENERGY RECOVERY, INC.        LEIF J. HAUGE,
                                   MARISSA A. HAUGE
                                   HAUGE TECHNOLOGIES, INC. (f/k/a)
                                   ENERGY RECOVERY INTERNATIONAL, INC.

By _____      By _____
    Of Counsel                         Of Counsel
Stephen B. Noona                 Glen A. Huff
 VSB No. 25367                   VSB No. 16272
Scott W. Kezman                 Paul E. McGowan
 VSB No. 36831                   VSB No. 41707
Windley Hofler Walden          Huff, Poole, Mahoney, P.C.
 VSB No. 43279                   4705 Columbus Street
Kaufman & Canoles, P.C.         Virginia Beach, Virginia 23462
2000 Bank of America Center     (757) 499-1841
One Commercial Place
Norfolk, Virginia 23510
(757) 624-3000

#670562 v1

2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ENERGY RECOVERY, INC.,

      Plaintiff,

v.

                                    Civil Action No. 2:00cv431

LEIF J. HAUGE and
ENERGY RECOVERY INTERNATIONAL, INC.,

      Defendants.

## ORDER

Upon joint submission of the parties, the Court ORDERS, ADJUDGES and DECREES as follows:

1.     Plaintiff, Energy Recovery, Inc. ("ERI") is the sole owner of all right, title, and interest in: (i) the patents and patent applications described below; (ii) any and all patent rights (including without limitation, the right to sue for any past infringement), intellectual property rights, property rights and all other rights in the below described patents and patent applications, in all patents and applications based on these patents and patent applications, and applications based on improvements or inventions related to the pressure exchanger disclosed prior to the date of this Order, whether or not conceived, developed, owned, and/or controlled by Leif J. Hauge, Hauge Technologies, Inc. (f/k/a Energy Recovery International, Inc.), Energy Recovery, Inc., and/or Ragnar Hermanstad; (iii) all associated filings and related patents; and (iv) all other intellectual property and other rights relating to pressure exchanger technology predating this Order. The referenced patents and patent applications include, but are not limited to:

a.     Norwegian Application Serial No. NO870016, corresponding to International Application Serial No. PCT/NO87/00086, and United States Letters Patent No.



EXHIBIT

E

4,887,942;

b.    Norwegian Application Serial No. NO894392, corresponding to International Application Serial No. PCT/NO90/00162, and United States Letters Patent No. 5,338,158;

c.    Norwegian Application Serial No. NO944558, corresponding to International Application Serial No. PCT/NO95/00219, and United States Letters Patent No. 5,988,993;

d.    Norwegian Application Serial No. NO974542, corresponding to International Application Serial No. PCT/NO98/00290, and U.S. Application Serial No. 09/508,694;

e.    Norwegian Application Serial No. NO20001877.

This Order is not intended to transfer rights to any inventions made by Leif J. Hauge, Hauge Technologies, Inc., Marissa A. Hauge, and/or Ragnar A. Hermanstad after the date of this Order. ERI's right to sue for past infringement shall not include the right to sue Leif J. Hauge, Hauge Technologies, Inc., Marissa A. Hauge, or Ragnar A. Hermanstad, as to each of whom releases have been made, nor does ERI's right to sue for past infringement include suits or claims against Bermuda Water Works, Ltd., Malta Desalinization Services, or Toyobo Company, Ltd., for the purchase or use of pressure exchangers purchased prior to the date of this Order.

2.    The terms of the Settlement Agreement attached hereto as **Exhibit A** are hereby incorporated into this Order as if fully set forth herein; accordingly, upon proper notice to the parties to the Settlement Agreement and proof of a material breach of the terms of **Exhibit A**, such breach[es] shall be punishable by this Court's contempt powers.

3.    This action is hereby DISMISSED, with prejudice, except that this Court retains

2

jurisdiction to the extent necessary to enforce the terms set forth and/or incorporated above.

It is so ORDERED.

_____          _____
            Date   .                              United States District Judge

WE ASK FOR THIS:

ENERGY RECOVERY, INC.                     LEIF J. HAUGE,
                                          HAUGE TECHNOLOGIES, INC. (f/k/a)
                                          ENERGY RECOVERY INTERNATIONAL, INC.

By_____             By_____
        Of Counsel                                Of Counsel
Stephen E. Noona                          Glen A. Huff
  VSB No. 25367                             VSB No. 16272
Scott W. Kezman                           Paul E. McGowan
  VSB No. 36831                             VSB No. 41707
Windley Hofler Walden                     Huff, Poole, Mahoney, P.C.
  VSB No. 43279                           4705 Columbus Street
Kaufman & Canoles, P.C.                   Virginia Beach, Virginia 23462
2000 Bank of America Center               (757) 499-1841
One Commercial Place
Norfolk, Virginia 23510
(757) 624-3000

#672517 v2 - eri/hauge/order/munt

3

JA0042

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of Defendant-

Appellant Leif J. Hauge's Opening Brief has been served on September 16, 2013,

via the Court's ECF system, on the counsel listed below:

> Stephen E. Noona
> Kaufman & Canoles, P.C.
> Post Office Box 3037
> Norfolk, VA 23514-3037

> _/s/ Ahmed J. Davis_
> Ahmed J.  Davis
> Email: Davis@fr.com
> FISH & RICHARDSON P.C.
> 1425 K Street, NW, 11th Floor
> Washington, DC 20005
> Telephone: (202) 783-5070
> Facsimile: (202) 783-2331

## <u>CERTIFICATE OF COMPLIANCE</u>

The Opening Brief of Defendant-Appellant Leif J. Hauge complies with the

type volume limitation set forth in FRAP 32(a)(7)(B).  The relevant portions of the

Opening Brief, including all footnotes, contain 6,491 words, as determined by

Microsoft Word® 2010.


Dated:  September 16, 2013        By: ___*/s/ Ahmed J. Davis*_____
                            Ahmed J. Davis
                            Email: Davis@fr.com
                            FISH & RICHARDSON P.C.
                            1425 K Street, NW, 11th Floor
                            Washington, DC 20005
                            Telephone: (202) 783-5070
                            Facsimile: (202) 783-2331

                            *ATTORNEY FOR*
                            *DEFENDANT-APPELLANT*
                            *LEIF J. HAUGE*